## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SOCORRO KERBEL DIAZ, et al.,** | Civ. Nos. 22-4725 (KM/LDW) |
| **Plaintiff,** | |
| **v.** | |
| **C.R. BARD, INC.,** | **OPINION** |
| **Defendant.** | |

### KEVIN MCNULTY, U.S.D.J.:

This matter comes before the Court on the motion of the defendant, C.R. Bard, Inc., to dismiss the complaint as untimely (DE 10), which the court converted to a motion for summary judgment, pursuant to Fed. R. Civ. P. 12(d) (DE 18). For the reasons stated herein, the motion is granted.

On August 30, 2010, Socorro Kerbel Diaz underwent a surgical procedure whereby her surgeon implanted an "Align Urethral Support Sling with mesh system" ("Align Sling"), a medical device manufactured by C.R. Bard. (*Id.* at ¶ 17. Ms. Kerbel alleges that she soon "began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems [and] dyspareunia." Id. at ¶ 18. On July 1, 2014, she had a procedure to remove the Align Sling. Id. at ¶ 19.

On July 29, 2022, Ms. Kerbel filed a Complaint in this Court, alleging four causes of action for negligence (Count I), design defect (Count II), failure to warn (Count III) and (on behalf of her spouse) loss of consortium (Count IV). Compl. at ¶¶ 15-22.

The parties agree that New Jersey state law governs, and that the applicable statute of limitations is two years. (See briefs in support of and in opposition to motion to dismiss. (DE 10, 14)) Further, there is no dispute that the device was implanted some twelve years, and removed some eight years,

before this complaint was filed in 2022. Ms. Kerbel asserts that her complaint is nevertheless timely. Her argument is that the limitations period was tolled by New Jersey's "discovery rule" until she knew or should have known of the nature and source of her injury.

C.R. Bard seemingly kept its powder dry for the reply brief. Together with that brief, it submitted an affidavit and 147 pages of exhibits, consisting largely of court pleadings. Of course, a court may take judicial notice of the existence of publicly filed pleadings whose authenticity is unquestioned, but I was concerned that Ms. Kerbel had not had an opportunity to address them or to contest their authenticity if appropriate. For that reason, I converted defendant's motion to one for summary judgment, pursuant to Fed. R. Civ. P. 12(d), and afforded Ms. Kerbel the opportunity to respond in kind. She did respond with a supplemental brief (DE 19) and attached certain medical records dating from September 2021 (DE 19-1).

The motion, then, is fully briefed and ripe for decision.

## I.   Summary Judgment Under Rules 12(d) and 56

Where a motion to dismiss introduces material extrinsic to the pleadings, Fed. R. Civ. P. 12(d) permits the court to convert it to a motion for summary judgment:

> **(d) Result of Presenting Matters Outside the Pleadings**. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). *In re Asbestos Products Liability Litigation (No. VI) (ex rel. Hassell)*, 822 F.3d 125, 134 (3d Cir. 2016).

The standards governing a summary judgment motion are familiar. Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 247–48,

(1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). A fact is "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

To demonstrate the existence of a genuine issue, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Likewise, "unsupported allegations … and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Rather, a party must present evidence sufficient to create a triable issue. *Anderson*, 477 U.S. at 248–49. By evidence, the Rule means "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

## III.   DISCUSSION

### A. Statute of Limitations and Discovery Rule

> When a plaintiff knows or has reason to know that he has a cause of action against an identifiable defendant and voluntarily sleeps on his rights so long as to permit the customary period of limitations to expire, the pertinent considerations of individual justice as well as the broader considerations of repose, coincide to bar his action. Where, however, the plaintiff does not know or have reason to know that he has a cause of action against an identifiable defendant until after the normal period of limitations has expired, the considerations of individual justice and the considerations of repose are in conflict and other factors may fairly be brought into play.

*Roa v. Roa*, 200 N.J. 555, 570–71, 985 A.2d 1225, 1234 (2010) (quoting *Caravaggio v. D'Agostini*, 166 N.J. 237, 245, 765 A.2d 182 (2001).

Under New Jersey law, product liability and negligence claims are subject to a two-year statue of limitations, which begins to run when the cause of action accrues. N.J. Stat. Ann. § 2A:14-2(a). The effect of that relatively short

limitations period is tempered by New Jersey's "discovery rule," which tolls the running of the statute "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered" the basis for the claim. N.J. Stat. Ann. § 2A:14-2. *Accord Szczuvelek v. Harborside Healthcare Woods Edge*, 182 N.J. 275, 281 (2005) (quoting *Lopez v. Swyer*, 62 N.J. 267, 272 (1973)).[1] To "discover" a cause of action, a party need not be in full possession of all the facts, or fully versed as to their legal significance; rather, the discovery rule delays the running of the statute only "until the client learns, or reasonably should learn, the existence of a state of facts which may equate in law with a cause of action. Accrual will not further be delayed until the client learns from a lawyer the legal effect of those facts." *Burd v. New Jersey Telephone Company,* 76 N.J. 284, 291 (1978).

To put it another way, the accrual of the cause of action is effectively postponed "so long as a party reasonably is unaware either that [she] has been injured, or that the injury is due to the fault or neglect of an identifiable individual or entity." *Savage v. Old Bridge-Sayreville Medical Group, P.A.,* 134 N.J. 241, 248 (1993). Where the injury and fault are not immediately evident, "it must be shown that a reasonable person, in plaintiff's circumstances, would have been aware of such fault in order to bar her from invoking the discovery rule." *Kendall v. Hoffman-LaRoche, Inc.,* 209 N.J. 173, 192 (2012). More concretely, in a medical-device case, the plaintiff must be aware not only that she is suffering some injury, but that there is a reasonable basis to believe that the defendant manufacturer is at fault for it.

"Fault" in the context of the discovery rule is simply that it is possible—not provable or even probable—that a third person's conduct that caused the injury was itself unreasonable or lacking

---

[1]     Because Ms. Kerbel resides in Colorado, a conflict of laws issue could potentially be presented. Ms. Kerbel agrees with C.R. Bard, however, that the law of her chosen forum, New Jersey, applies. Both parties proffer that there is no conflict between the laws of these two states regarding the statute of limitations. *See* Def. Brf. (DE 10) p.4; Pl. Opp. (DE 14) pp. 4–5. The Court therefore defaults to forum law, the law of New Jersey. *Id. See generally Restatement (Second) of Conflict of Laws,* §§ 6 & 145; *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013).

> in due care. In other words, knowledge of fault does not mean
> knowledge of a basis for legal liability or a provable cause of action;
> knowledge of fault denotes only facts suggesting the possibility of
> wrongdoing. Thus, knowledge of fault for purposes of the discovery
> rule has a circumscribed meaning: it requires only the awareness
> of facts that would alert a reasonable person exercising ordinary
> diligence that a third party's conduct may have caused or
> contributed to the cause of the injury and that conduct itself might
> possibly have been unreasonable or lacking in due care.

*Savage*, 134 N.J. at 248, 633 A.2d at 518.[2]

In connection with its motion to dismiss, C.R. Bard described prior litigations between the parties in an effort to demonstrate that Ms. Kerbel surely knew of her cause of action, having actually asserted it before in prior litigations. In response to the motion to dismiss, the plaintiff relied heavily on the principle that the applicability of the statute of limitations must be clear from the face of the complaint. In reply, C.R. Bard submitted the actual pleadings in those prior litigations, as well as other material, as exhibits. It was at that point that the Court converted the motion to one for summary judgment, and gave Ms. Kerbel the opportunity for a further response.

In converting a motion under Rule 12(d), the Court must of course be sensitive to the risk of placing the plaintiff, who has not had the benefit of discovery, at a disadvantage. In my view, this case did not present such a risk. If no documents were at hand, she might nevertheless have submitted an affidavit on personal knowledge, *see* Fed. R. Civ. P. 56(c)(4), or submitted an affidavit explaining why essential facts were unavailable but could be obtained in discovery, *see* Fed. R. Civ. P. 56(d). This she did not do. More generally, the

---

[2]     For simplicity, throughout this analysis I have referred to the plaintiff as Ms. Kerbel. The same two-year statute of limitations applies to her husband's *per quod* claim, but theoretically the discovery rule could apply differently to the spouse's discovery of his injury, if independent. *See generally Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 574 (3d Cir. 1976) (noting that timeliness of independent *per quod* claim could depend on spouse's discovery of relevant facts, if separate and independent); *Lukasewicz v. Valtris Specialty Chem. Co.*, No. 221CV04128SRCCLW, 2022 WL 1451531, at *1 (D.N.J. May 9, 2022). No factual basis is suggested, however, for any separate analysis of the discovery rule with respect to Mr. Kerbel's *per quod* claim.

issue, as presented, did not require discovery of facts beyond the plaintiff's control; it had to do with what she knew or should have known about a potential cause of action more than two years before this action was filed.

C.R. Bard offers the following pertinent evidence, which the Court considers in support of summary judgment.

*First,* C.R. Bard cites a 2008 FDA Public Health Notification alerting medical professionals and the public of complications resulting from pelvic mesh products. Ms. Kerbel cannot with good grace dispute the authenticity or relevance of this Notification, as she cites and describes that very document in her complaint: "On October 20, 2008, the Food and Drug Administration ('FDA') issued a Public Health Notification that described over 1,000 reports of complications (otherwise known as 'adverse events') that had been reported over a three-year period relating to pelvic mesh products."). (Cplt. ¶ 24)

Ms. Kerbel objects that she, as a medical lay person, cannot be held accountable for the knowledge of this notification, which in any event was issued before the device was implanted in her body. I agree that such a notification, standing alone, would not be sufficient. Nevertheless, it contributes to a body of knowledge that she, her attorneys, and her doctors could have learned about when her symptoms began to appear and they began to search for the cause.[3]

*Second,* plaintiff herself alleges that she began to experience chronic pain in 2010. She argues that she did not know to a certainty that the Align device was to blame at that time. Nevertheless, this fact contributes to the collection of facts that surely placed the plaintiff on inquiry notice as to the cause.

*Third,* C.R. Bard cites the 2014 surgical removal of the Align device from the plaintiff's body. Commonly, such corrective surgery would place a plaintiff

---

[3]     So the claim is not, as plaintiff would have it, that she is being charged with knowledge of all FDA filings. To see the point of citing this Notification, one need only imagine how a plaintiff's argument would look if there had been no such warnings disseminated to the public. This evidence passes the test of relevance, in that it contributes to the plausibility of the defendant's position.

on notice that she may have a claim. *See, e.g., Bond v. Johnson & Johnson,* No. CV 21-05327 (FLW), 2021 WL 6050178, at *14 (D.N.J. Dec. 21, 2021), *aff'd*, No. 22-1127, 2022 WL 4594185 (3d Cir. Sept. 30, 2022). But not necessarily, says plaintiff. Plaintiff cites a case interpreting the discovery rules of several states, stating that "[r]evision surgery, alone, only tells a plaintiff that she is suffering from complications as a result of her implant procedure, but is silent as to the cause of that complication," leaving open the possibilities of, *e.g.*, malpractice, a product defect, or an unavoidable side effect. (SJ Opp. at 4, citing *In re: Smith & Nephew Birmingham Hip Resurfacing Hip Implant Products Liability Litigation*, 2018 U.S. Dist. LEXIS 198316, *33-34 (D. Md. Nov. 19, 2018)). Facts are lacking as to what Ms. Kerbel was told about the reasons for surgical removal, but she was in a position to supply them in opposition of a motion for summary judgment, if only in abbreviated affidavit form.

Pause the analysis for a moment. Thus far, C.R. Bard has made a fairly persuasive case that Ms. Kerber's symptoms and the corrective surgery in 2014 would reasonably have placed her on notice that she had a potential claim against C.R. Bard. Nevertheless, on a summary judgment standard, this limited record could also be consistent with the conclusion that the existence of a cause of action still required some level of medical evidence not yet before the Court. Cases have delayed accrual, for example, where, based solely on nonexistent or equivocal medical evidence, the plaintiff did not then know his injury may have resulted from the fault of a particular party. *See, e.g., Vispisiano v. Ashland Chem. Co.*, 107 N.J. 416, 427, 527 A.2d 66, 72 (1987).

What really pushes C.R. Bard's motion over the line, however, is the evidence of prior litigations between these parties. We do not have to weigh contemporaneous medical evidence. We do not have to speculate as to whether Ms. Kerber was lulled into inaction. We do not have to guess whether she knew she could sue C.R. Bard for her injuries. She *did* sue C.R. Bard for those very injuries in 2016 and 2019, well outside the limitations period. Thus:

*Fourth,* C.R. Bard cites a 2016 litigation in Missouri state court, *Stanton, Connie, et al. v. C. R. Bard, Inc., et al.*, Docket No. 1622-CC10871. A copy of the Petition in that matter (the "Stanton Pet."), dated Oct. 18, 2016, is in the summary judgment record. (DE 15-2 at 2). The same law firm that represents Ms. Kerber in this action brought that prior litigation on behalf of Ms. Kerber and a number of other named plaintiffs. The subject matter is identical to that of this action:

> 5. Plaintiff SOCORRO KERBEL DIAZ is a nature person residing in the State of Colorado. Plaintiff SOCORRO KERBEL DIAZ was implanted with a C.R. Bard Align device. The pelvic mesh device was manufactured, marketed, advertised and promoted by Defendants C.R. Bard [and others]. After the pelvic mesh device was implanted Plaintiff SOCORRO KERBEL DIAZ began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

(Stanton Pet. ¶ 5)

The *Stanton* Petition relates that the materials used in C.R. Bard's Align and other devices produce negative immune responses and inflammation, contributing to adverse effects such as infection and chronic pain. (*See* Stanton Pet. ¶¶ 39, 40.) It alleges that the defendants, C.R. Bard and two foreign manufacturers, had actual or constructive knowledge of these problems but continued to market the products as safe. It asserts causes of action including Strict Liability/Failure to Warn, Manufacturing Defect, Design Defect, and Negligence.

Both the factual allegations and the specific legal claims in that 2016 *Stanton* action substantially overlap the facts and claims asserted in this 2022 action. Through the same counsel, Ms. Kerbel and her co-plaintiffs asserted in 2016 that their injuries could be traced to the fault of C.R. Bard.[4]

---

[4]     The Stanton litigation was dismissed for lack of prosecution on April 11, 2018. (DE 15-2 at 48)

*Fifth,* C.R. Bard cites a second, 2019 litigation in Missouri state court, *Kostedt, Deborah, et al. v. C. R. Bard, Inc., et al.*, Docket No. 1922-CC00184. A copy of the Petition in that matter (the "Kostedt Pet."), dated January 25, 2019, is in the summary judgment record. (DE 15-2 at 52)) The *Kostedt* petition was essentially a revival of the dismissed *Stanton* litigation. The same law firm that represents Ms. Kerber in this action brought the *Kostedt* litigation on behalf of Ms. Kerber and a number of other named plaintiffs. The subject matter, again, is identical to that of this case. The Petition alleges, in almost precisely the same words as before, that Ms. Kerbel was "implanted with an Align device during surgery performed on or around August 30, 2010" and that she then "began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe [sic] may have underwent multiple corrective surgeries to remove [sic] or part of the pelvic mesh device." (Kostedt Pet. ¶ 29). And it asserts causes of action similar to those asserted here, in both instances against C.R. Bard.[5]

Particularly against the backdrop of these prior litigations, plaintiff's arguments do not suffice to create a triable issue as to the application of the discovery rule. Consider, for example, her arguments that her symptoms, beginning in 2010, or her 2014 surgery to remove the device did not put her on warning of a claim against C.R. Bard. By 2016, she was making just such a claim. Her complaint alleged that C.R. Bard's legal liability could be inferred from her injuries, in the context of other facts, including the corrective surgery. And again, in 2019, she filed a similar claim, through the same counsel. To put it another way, if *those* litigations were filed in 2016 and 2019, there is no further reason that *this* litigation could not have been filed in 2016 or 2019.

Plaintiff has very little substantive to say with respect to the 2016 and 2019 litigations. Counsel argues that "there is nothing in the record" and that

---

[5]      The Kostedt case was removed to federal court (DE 15-2 at 104, 110), and then dismissed for lack of personal jurisdiction over C.R. Bard (*id.* at 135, 140)

the court is merely being "ask[ed] . . . to infer" her knowledge. (SJ Opp. 5) But no mind-reading is required here. Nor are the facts so far outside of the plaintiff's knowledge that she could not have asserted them in an affidavit without the need for further discovery. At any rate, this would appear to be a non-issue. Long before the limitations period began to run, plaintiff had the benefit of medical and legal counsel, and knew she possessed a claim, because she actually asserted that claim in state court. If Ms. Kerbel and her counsel were not aware of the pertinent facts and the identity of the potential defendant, they could not have asserted those very facts against C.R. Bard in the 2016 and 2019 petitions.[6]

Finally, Ms. Kerbel cites medical records dating from September 2021 (DE 19-1), which would be within the two-year limitations period. These, counsel argues, demonstrate that she has bladder issues, allegedly stemming from the implant that was removed in 2014. As a matter of law, however, continuing effects of an injury do not restart the limitations period; the discovery rule very clearly provides that the period starts running not when all effects of the injury have run their course, but when that injury (and the potentially responsible party) first is or should have been discovered. And, for statute of limitations purposes, "continuing injuries" from a past tort must be distinguished from a "continuing tort," *i.e.,* one involving fresh breaches of a tort-law duty within the limitations period. *See Haddonbrook Assocs. v. Gen. Elec. Co.*, No. CIV 08-0014(JBS), 2010 WL 715388, at *3 (D.N.J. Feb. 25, 2010), *aff'd*, 427 F. App'x 99 (3d Cir. 2011); *Kichline v. Consol. Rail Corp.*, 800 F.2d 356, 360 (3d Cir. 1986) (while original injury stemming from employee's

---

[6]   *See generally Lapka v. Porter Hayden Co.*, 162 N.J. 545, 553, 745 A.2d 525, 529 (2000) (affirming where Appellate Division "panel concluded that plaintiff knew his condition was asbestos-related 'at least as of the date he signed and filed his workers' compensation petition in January 1986.' The court also determined that, because the workers' compensation petition 'unquestionably established plaintiff's knowledge of the essential facts,' no evidentiary hearing was required" under state procedural standards.). Pursuant to the *Erie* doctrine, the *Lopez* procedure of having the judge resolve discovery rule issues *via* an evidentiary hearing does not apply in federal court. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 571–73 (3d Cir. 1976)

exposure to fumes was time-barred, even after application of discovery rule, employee could still sue for injuries resulting from additional exposure within limitations period). It is not alleged that C.R. Bard engaged in relevant conduct of any kind, let alone tortious conduct, within the limitations period.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint, converted to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d), is GRANTED. An appropriate order accompanies this Opinion.

Dated:  May 15, 2023

/s/ Kevin McNulty

_____
**HON. KEVIN MCNULTY**
**United States District Judge**